UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LEIGH ANN D.,[1] | : | Case No. 3:20-cv-322 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# DECISION AND ENTRY

Plaintiff Leigh Ann D. brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #12), the Commissioner's Memorandum in Opposition (Doc. #18), and the administrative record (Doc. #10).

**I.      Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on October 2, 2017, alleging disability due to both mental and physical impairments. After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Gregory Kenyon. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] He reached the following main conclusions:

> Step 1: Plaintiff has not engaged in substantial gainful employment since March 29, 2017.
>
> Step 2: She has the severe impairments of residuals of multiple right rib fractures, tendinitis of the right shoulder, anxiety disorder, and post-traumatic stress disorder.
>
> Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work… subject to the following additional limitations: (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds, (3) no work around hazards such as unprotected heights or dangerous machinery; (4) no concentrated exposure to extreme cold or wet areas; (5) occasional use of the right upper extremity for overhead reaching; (6) [Plaintiff] is limited to performing unskilled, simple, repetitive tasks; (7) occasional superficial contact with co-workers and supervisors (superficial contact is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts); (8) no public contact; (9) no fast paced production work or jobs which involve strict production quotas; and (10) [Plaintiff] is limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next."

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

       She is unable to perform any of her past relevant work.

Step 5:  She could perform a significant number of jobs that exist in the national economy.

(Doc. #10-2, *PageID* #s 68-75). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 75-76.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #10-2, *PageID* #s 75-76), Plaintiff's Statement of Errors (Doc. #12), and the Commissioner's Memorandum in Opposition (Doc. #18). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the

claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.     Discussion**

In her Statement of Errors, Plaintiff raises a single assignment of error, which is that the ALJ failed to "fully consider essential vocational expert testimony finding [Plaintiff] to have functional capacity to perform light work." (Doc. #12, *PageID* #1010). According to Plaintiff, ALJ Kenyon erred by failing to consider the vocational expert's testimony on absences and off-task behavior when finding that Plaintiff would be able to perform light exertional work. *Id*. at 1010-14. In response, the Commissioner points out that the ALJ's formulated residual functional capacity (RFC) was more restrictive than any medical opinion of record and that his decision to exclude the work-preclusive limitations of being off-task 15 percent of the day and/or absent more than two days a month is supported by substantial evidence. (Doc. #18, *PageID* #s 1026-33).

During the hearing, ALJ Kenyon posed a series of hypotheticals to the vocational expert about the availability of jobs in the national economy for an individual with certain hypothetical limitations. (Doc. #10-2, *PageID* #s 106-09). In the first two hypotheticals posed by the ALJ, the vocational expert was able to identify a significant number of jobs that would be available in the national economy for an individual with the specified limitations. *Id.* In the next hypothetical, the vocational expert was asked whether the identified jobs would allow the hypothetical individual to be off-task for 15 percent of the time due to complaints of pain. *Id*. at 108. In response, the vocational expert indicated that such a limitation would be work-preclusive. *Id*. Similarly, the vocational expert testified that Plaintiff would not be able to maintain gainful employment if she were absent two days per month. *Id*. at 109.

4

In assessing Plaintiff's RFC, ALJ Kenyon ultimately decided not to include either of final two hypothetical limitations related to off-task behavior and absenteeism. *See id*. at 70. Plaintiff contends that the failure to include these limitations in the RFC constitutes reversible error as she would have been found disabled had these limitations been included. (Doc. #12, *PageID* #s 1010-14).

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis …." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (July 2, 1996). The ALJ is responsible for assessing an individual's RFC. 20 C.F.R. § 404.1520(a)(4). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- *i.e.*, opinions about what the individual can still do despite his or her impairment(s) -- submitted by an individual's treating source or other acceptable medical sources." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (footnote omitted). Furthermore, in assessing a plaintiff's RFC, the ALJ is not required to incorporate every limitation included in the hypothetical questions posed to the vocational expert—rather, the ALJ need only incorporate the limitations he deems credible. *Casey v. Sec'y of Health & Human Servs*., 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.") (internal citation omitted).

In this case, substantial evidence supports ALJ Kenyon's assessment of Plaintiff's RFC. ALJ Kenyon explained the history of Plaintiff's physical and mental impairments stemming from her car accident. (Doc. #10-2, *PageID* #s 71-74). He detailed that the accident initially caused multiple rib fractures and a laceration of her liver and later resulted in pain, numbness, and reduced

5

range of motion in her right arm, neck, and back. *Id*. ALJ Kenyon also considered that Plaintiff sought treatment for her situational anxiety and trauma related to the accident, noting that she often reported panic attacks, anxiety, depression, and sleep disturbance. *Id*. at 72-73. In sum, the ALJ thoroughly discussed Plaintiff's medical records for these impairments, including her initial injuries and the treatment that followed. *Id*.

Furthermore, the administrative record does not contain any medical opinion detailing how Plaintiff's mental or physical impairments, either individually or in combination, impact her functioning to the point that they would cause her to be off-task more than 15 percent of the day or be regularly absent more than 2 days a month. Instead, Plaintiff relies on generalities in her medical records and testimony to support her claim that her RFC should have included the work-preclusive restrictions of being off-task and absent from work due to her impairments. (Doc. #12, *PageID* #s 1011-14).  Specifically, Plaintiff points to her different physical and mental impairments stemming from her car accident and the ongoing treatment she receives for the resulting pain and trauma.  *Id*.  Noticeably absent from Plaintiff's argument is the fact that none of the records endorse the work-preclusive restrictions she believes should have been included in her RFC.  Indeed, while the record confirms that Plaintiff has been diagnosed and receives regular treatment for her pain, reduced range of motion, anxiety, and PTSD, there is no medical opinion of record stating that these impairments would cause Plaintiff to be off-task for more than 15 percent of the time or regularly miss more than two days of work a month.

In addition to her treatment records, Plaintiff also relies on the opinion of the medical consultative examiner, Amita Oza, M.D. (Doc. #12, *PageID* #1013). Dr. Oza submitted an assessment of Plaintiff's impairments and capabilities in December 2017. (Doc. #10-7, *PageID* #s 566-71). In his assessment, Dr. Oza reviewed Plaintiff's history of her car accident and resulting

6

injuries and treatment. *Id*. at 566. On examination, he noted that Plaintiff's right shoulder was restricted but that she had full range of motion in her wrists, elbows, hips, knees, and ankles. *Id*. at 567. Plaintiff presented without tenderness on palpitation of the dorsolumbar of the spine and also had full range of motion at LS spine. *Id*. She walked without an ambulatory aid and could almost touch her toes. *Id*. Dr. Oza noted that Plaintiff's neck appeared without JVD, carotid bruit, or thyromegaly and that she had slightly decreased, but almost full, range of motion at her C-spine. *Id*. Dr. Oza observed scars in the right hemithoracic region from Plaintiff's surgery and noted that she had nerve pain and tenderness emanating from this area. *Id*. In summarizing his findings, Dr. Oza concluded that Plaintiff continued to experience pain and paresthesia on the right side of her chest as a result of the rib plating as well as decreased range of motion and pain in her right shoulder, which limits her daily activities. *Id*. He also noted that Plaintiff reported constant dreaming about the accident, crying, and difficulty getting out of the house. *Id*. As a result, Dr. Oza opined that these impairments impact Plaintiff's ability to perform work-related activities. *Id*.

Notably, however, Dr. Oza did not provide an opinion on Plaintiff's off-task behavior or absenteeism. In fact, Dr. Oza did not provide any specific limitations on Plaintiff's work-related activities. Instead, he merely indicated that Plaintiff's physical and mental impairments affected her ability to work, which itself was considered and attributed weight by the ALJ. Indeed, in reviewing this opinion, ALJ Kenyon found Dr. Oza's opinion to be persuasive, explaining that his "assessment[] [is] consistent with [Plaintiff's] ongoing treatment for pain, numbness, and reduced range of motion. However, the evidence shows that she has recovered from her physical injuries such that she would be able to perform light level work." (Doc. #10-2, *PageID* #73). Accordingly, the ALJ properly considered Dr. Oza's opinion, gave it persuasive weight, and found it to support his finding that Plaintiff could perform light work. Given that Dr. Oza did not opine that Plaintiff

7

would be off-task for 15 percent of the time or absent two days a month, the ALJ's decision to not include these restrictions is not error.

Additionally, Plaintiff's reliance on her subjective complaints to support including these limitations in her RFC is unavailing. It is well-settled that an ALJ is not required to accept a plaintiff's subjective complaints but may instead properly consider the credibility of a plaintiff. *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). If the ALJ's credibility determinations are explained and enjoy substantial support in the record, the Court is without authority to revisit those determinations. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). *See Beavers v. Sec'y. of Health, Educ. and Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978).

In this case, it is notable that none of the subjective complaints cited by Plaintiff actually demonstrate that her impairments would cause the limitations she advocates for. Specifically, in support of her argument, Plaintiff points to her documented reports of ongoing pain and trauma, including her testimony about her limitations in lifting, standing, and walking as well as her difficulty in performing household chores and recurrent panic attacks. (Doc. #12, *PageID* #1013-14). Absent from Plaintiff's argument, however, is how the difficulty she has in completing these tasks translates to a finding that she would be off-task more than 15 percent of the time or regularly miss more than two days of work a month.

Further, even if Plaintiff had provided such citations to the record, substantial evidence exists to support ALJ Kenyon's decision not to include those limitations in the RFC. For example, in response to Plaintiff's subjective complaints regarding the severity of her symptoms, ALJ

8

Kenyon concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Doc. #10-2, *PageID* #73).  Here, the ALJ noted that Plaintiff's complaints regarding her increased pain on exertion and in cold or wet weather were fully accommodated by the RFC he formulated, which limited her to only light exertion and included additional postural and environmental limitations. *Id*. Additionally, with regard to her mental impairments, ALJ Kenyon referred to his previous findings of only moderately severe limitations in adaptive functioning, of which he also formulated RFC restrictions. *Id*. at 70, 73.  Hence, ALJ Kenyon carefully considered the totality of the evidence, applied the proper standards, and clearly explained his credibility findings.  In doing so, he did not find Plaintiff's alleged impairments to be wholly uncredible but, rather, he simply found that they did not support the additional hypothetical limitations advocated by Plaintiff.  Under these circumstances, this Court is without authority to disturb that finding.

For these reasons, Plaintiff's statement of error is not well taken.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Errors (Doc. # 12) is **DENIED**;

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the docket of this Court.


February 17, 2022                                            *s/Peter B. Silvain, Jr.*
                                                              Peter B. Silvain, Jr.
                                                              United States Magistrate Judge